UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLOBAL CURE MEDICINE LLC,

               Plaintiff,

   v.

ALFA PHARMA LLC, SULIMAN AL-
FAYOUMI

               Defendants.

CASE NO. C19-588 MJP

COURT'S PRELIMINARY
INSTRUCTIONS TO THE JURY

Dated December 14, 2020.

Marsha J. Pechman
United States District Judge

## INSTRUCTION NO. 1

### Duty of the Jury

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set of instructions throughout the trial.  This set of instructions is not to be used outside of this trial and must remain in a safe place when you sign off in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not, including unconscious bias. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## INSTRUCTION NO. 2

### Neutral Statement

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This is a civil case brought by Plaintiff Global Cure Medicine, LLC against Defendants Alfa Pharma LLC and Suliman Al-Fayoumi. Global Cure is an importer of prescription drugs. It is located in Oman. Alfa Pharma is a prescription drug wholesaler/distributer located in Renton, Washington. Suliman Al-Fayoumi is the sole owner and operator of Alfa Pharma.

In March 2017, Global Cure purchased a drug called Soliris from Alfa Pharma to resell to the Royal Hospital of Oman. Alfa Pharma arranged for the delivery of the drugs to Global Cure and Global Cure then delivered the drugs to the Royal Hospital. In July 2017 the Royal Hospital rejected the drugs and in August 2017 Global Cure demanded that Defendants take the drugs back.

Global Cure pursues three claims: (1) Claim One: breach of contract; (2) Claim Two: breach of express warranty; and (3) Claim Three: fraud.

As to Claims One and Two, the Court has determined that Alfa Pharma breached its contract and express warranties to Global Cure by not delivering the drugs in the way it expressly promised. You are to decide whether Global Cure accepted the delivery of drugs, and, if so, whether it timely rejected their delivery. And as to Claim Three, you are to decide whether Alfa Pharma and Al-Fayoumi made fraudulent misrepresentations to Global Cure about the drugs it delivered.

Alfa Pharma challenges these claims and asserts that Global Cure failed to mitigate its damages.

**INSTRUCTION NO. 3**

**Conduct as Jurors**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries,

searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**INSTRUCTION NO. 4**

**Outline of Trial**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the virtual jury room to deliberate on your verdict.

**INSTRUCTION NO. 5**

**Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the virtual jury room to decide the case. Do not let note-taking distract you. Throughout trial, your notes should be left so that no one reads them.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**INSTRUCTION NO. 6**

**No Transcript**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**INSTRUCTION NO. 7**

**Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**INSTRUCTION NO. 8**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**INSTRUCTION NO. 9**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## INSTRUCTION NO. 10

### Questions by Jurors

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question into the "chat" feature in Zoom. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

## INSTRUCTION NO. 11

### What is not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they will say in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4. Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION NO. 12**

**What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

You may also hear testimony in the form of depositions. This testimony is also evidence from which you are to decide the facts. You should draw no inference from whether these individuals were or were not physically present in the court themselves.

**INSTRUCTION NO. 13**

**Foreign Language Testimony**

During this trial, you will hear testimony of witnesses who will be testifying in the Arabic or Malayalam languages.  Witnesses who do not speak English or are more proficient in these other languages will testify through an official court interpreter.  Although some of you may know Arabic or Malayalam languages, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

You must not hold that person's citizenship or ethnicity against them.

## INSTRUCTION NO. 14

### Bench Conferences and Recesses

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**INSTRUCTION NO. 15**

**Burden of Proof: Preponderance**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION NO. 16**

**Burden of Proof: Clear, Cogent, and Convincing**

A party who alleges fraud has the burden of proving each of the elements of fraud by clear, cogent, and convincing evidence. However, this burden of proof is applicable only to the proof of fraud and the claim of fraud. Proof by clear, cogent, and convincing evidence means that the element must be proved by evidence that carries greater weight and is more convincing than a preponderance of evidence. Clear, cogent, and convincing evidence exists when occurrence of the element has been shown by the evidence to be highly probable. However, it does not mean that the element must be proved by evidence that is convincing beyond a reasonable doubt.

## INSTRUCTION NO. 17

### Agreed Facts of the Parties

Plaintiff and defendants have agreed, or stipulated, to the certain facts.  You should therefore treat these facts as having been proved.  You should consider these facts in addition to those facts which were proved to you at trial. The Parties have agreed to the following facts:

1.      Global Cure is a pharmaceutical importer located in the country of Oman. Alfa Pharma is a pharmaceutical wholesaler/distributor located in Renton, Washington, and is wholly owned and solely operated by Defendant Al-Fayoumi.

2.      In September 2016, the Ministry of Health of the Sultanate of Oman requested proposals to supply the Royal Hospital with Soliris from Alexion Pharmaceuticals, Inc. Soliris is the first and only therapy for the treatment of a blood disease characterized by low levels of circulating red blood cells. Soliris is a life-saving medication for this disease, but a single dose containing an impurity, or an improper quantity of the active ingredient, could pose immediate life-threatening danger. Soliris was the most expensive drug in the world in 2010 and the fourth most expensive medication in the United States in 2015.

3.      In February 2017, Defendants sent a formal quotation for 75 vials of Soliris and requested a Purchase Order from Global Cure. The email stated, "We guarantee delivery within 2-3 weeks of order confirmation as we currently have most of the order volume in stock (i.e., around 60 vials). We can't however continue to hold the stock for much longer without a firm order."

4.      Although Alfa Pharma had a warehouse in Renton, it did not hold any of the vials of Soliris physically at its warehouse in Renton.

5.      Global Cure issued purchase orders to Alfa Pharma for 75 units of Soliris to be sourced from Alexion, U.S.A., with minimum expiration dates of 1 year, and to be accompanied by their Certificates of Authenticity (COA) and Certificates of Origin (COO). The COA establishes authenticity and manufacturing date of the product and the COO establishes its origin.

6.      Alfa Pharma confirmed the order with an Order Confirmation for 75 units of Soliris that again stated "Original Certificates of Analysis & Certificates of Origin will be supplied" and that the expiry dates would be "Min 1 year from delivery." The order confirmation was sent with a document called "General Terms & Conditions" and dated February 24, 2017.

7.      Alfa Pharma invoiced Global Cure in accordance with the purchase orders and again stated on its invoice that "Original Certificates of Analysis & Certificates of Origin will be supplied" and that the Expiry Date would be "Min 1 year from delivery."

8.      The parties' purchase contract had at least the following material terms: (1) the Soliris would be manufactured by or for Alexion (whether from the U.S. or Europe), (2) the Soliris would have minimum expiration dates of one year from delivery, and (3) AlfaPharma would provide copies of the original Certificates of Analysis created by the manufacturer or an authorized manufacturing entity and Certificates of Origin showing the country of origin of the medication.

9.      Global Cure paid Alfa Pharma a total $366,250 USD for the Soliris.

10.     A first shipment of Soliris in fulfillment of a majority of the 75 vials ordered by Global Cure arrived in Oman on or around April 23, 2017, from a source in Turkey. Another shipment arrived in Oman to complete fulfillment of the order for 75 vials on or around May 11, 2017 from the same source in Turkey.

11.     The vials of Soliris did not come with adequate documentation. For example, some of the batches delivered had no Certificate of Analysis while others had inconsistencies and irregularities.

12.     Soliris must be used before its expiration date.

13.     Global Cure supplied 40 units of the Soliris to the Royal Hospital at the end of April 2017. The Royal hospital used two of the vials of Soliris. Global Cure sent the documentation it received from Alfa Pharma, including the certificates of analysis, to the Royal Hospital. The Royal Hospital rejected the documentation as inadequate to authenticate the Soliris according to its requirements and withheld payment to Global Cure of the $448,500 contract price for the 75-vial order.

14.     On July 6, 2017, the Royal Hospital formally rejected the Soliris supplied to it by Global Cure and instructed Global Cure to retrieve the vials in the Royal Hospital's possession. Global Cure forwarded the rejection letter to Alfa Pharma.

15.     Global Cure requested Alfa Pharma to authenticate the Soliris. Alfa Pharma was unable to provide documentation sufficient to authenticate the Soliris delivered. Alfa Pharma did not provide replacement Soliris and did not provide any other form of authentication.

16.     Global Cure made additional requests from Alfa Pharma for assistance in proving authenticity. On July 20, 2017, Global Cure sent an email notifying Alfa Pharma that the Royal Hospital had rejected the pharmaceuticals and asking Alfa Pharma for documentation that Alfa Pharma's source in Turkey, a company called Xerox Pharma, had obtained the Soliris from Alexion or an authorized Alexion distributor.

17.     On August 3, 2017, Global Cure informed Alfa Pharma that the Royal Hospital had now tendered the supply order to others after rejecting the delivery from Global Cure. Global

Cure requested that Alfa Pharma attempt to get fresh documentation to authenticate the Soliris, and if fresh documentation could not be provided, to take back the Soliris at issue, and refund Global Cure the money paid together with payment of the penalties that the Royal Hospital would assess. Alfa Pharma did not take back the pharmaceuticals and did not pay any money to Global Cure.

18.     The Royal Hospital obtained 75 vials of Soliris from another source and formally canceled the OMR 172,500 ($448,500) Global Cure contract on April 30, 2018. The Royal Hospital imposed its administrative fees and cancelation penalty in the amount of OMR 20,624.475 ($53,624 USD), for a total $502,124 USD.

19.     The parties do not know whether the drugs supplied by Alfa Pharma are chemically identical to Soliris or not.

Preliminary Jury Instructions

**INSTRUCTION NO. 18**

**Claims One and Two: Breach of Contract and Breach of Warranty**

Global Cure pursues claims for breach of contract and breach of express warranties. The Court has found that Alfa Pharma breached the Parties' purchase agreement and three express warranties made to Global Cure. These three terms/warranties were that the drugs would: (1) be sourced from Alexion U.S.A. or Alexion Europe, (2) have a minimum expiration of one year from delivery, and (3) be accompanied by original Certificates of Analysis (COA) and Certificates of Origin (COO).

Two issues remain for you to decide:

(1) Did Global Cure accept the drugs?

(2) If Global Cure accepted the drugs, did it timely reject the delivery of the drugs?

If you find that Global Cure did not accept the drugs, then your verdict should be for Global Cure.

If you find that Global Cure accepted the drugs and timely rejected the delivery of them, then your verdict should be for Global Cure.

If you find that Global Cure accepted the drugs and did not timely reject the delivery of them, your verdict should be for Alfa Pharma.

**INSTRUCTION NO. 19**

**Claims One and Two: Acceptance of Goods**

To decide Claims One and Two, you must decide whether Global Cure accepted the drugs.

There are three ways a buyer such as Global Cure can accept goods. First, acceptance can occur when the buyer, after a reasonable opportunity to inspect the goods, indicates to the seller that the goods meet the contract's terms. Second, acceptance can occur when the buyer, after a reasonable opportunity to inspect the goods, indicates to the seller that it will take the goods even though they do not meet the contract's terms. Third, acceptance can occur if the buyer acts in a way that is inconsistent with the seller's ownership of the goods. And as applies to this case, acceptance of a part of a commercial unit of the drug amounts to acceptance of the entire commercial unit of the drug. A "commercial unit" can be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole.

## INSTRUCTION NO. 20

### Claims One and Two: Rejection of Goods

If you find that Global Cure accepted the drugs, then to decide Claims One and Two, you must decide whether Global Cure promptly rejected delivery of the drugs.

A buyer may revoke its acceptance of a goods that do not meet the terms of a purchase agreement if the defects substantially impair the value of the goods to the buyer. There are two ways to reject goods. First, the buyer may accept the goods and later reject them only if it reasonably assumed that the defects would be promptly cured by the seller. Second, the buyer may reject the goods if it did not discover the defect at the time of acceptance and the acceptance was reasonably induced by the difficulty of discovery before acceptance or by the seller's assurances.

For either method of revocation to be valid, the buyer must make its revocation within a reasonable time after the buyer discovers or should have discovered the ground for the revocation and before any substantial change in condition of the goods which is not caused by their own defects. Revocation of acceptance of goods is not effective until the buyer notifies the seller of it. The buyer has a duty after rejection to hold the rejected goods with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them.

**INSTRUCTION NO. 21**

**Claim Three: Fraud**

Global Cure pursues a claim of fraud against both Defendants. Global Cure asserts that Defendants made two fraudulent misrepresentations: (1) that Defendants had 60 vials of Soliris "in stock"; and (2) that Defendants could and would deliver Soliris: (a) manufactured by or for Alexion (whether from the U.S. or Europe), (b) with minimum expiration dates of one year from delivery, and (c) accompanied by copies of the original Certificates of Analysis and Certificates of Origin created by the manufacturer or an authorized manufacturing entity.

As to the first misrepresentation, you are to decide whether Global Cure has proven by clear and convincing evidence that it relied on the truth of Defendants' assertion that it had 60 vials of Soliris "in stock."

As to the second misrepresentation, you are to decide whether Global Cure has proven by clear and convincing evidence that Defendants knew that they could not or would not deliver Soliris meeting any of three terms.

If Global Cure has met its burden of proof as to either of the misrepresentations, then your verdict shall be for Global Cure on this claim. On the other hand, if Global Cure has not met its burden of proof as to both misrepresentations, then your verdict shall be for the Defendants. You are to consider each fraudulent misrepresentation independently and Global Cure is not required to prove that both misrepresentations were fraudulent.

## INSTRUCTION NO. 22

### Measure of Damages: Claim One and Two

It is the duty of the court to instruct you about the measure of damages. By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

If you find that Global Cure has either not accepted or accepted and timely rejected the drugs, you must determine whether Global Cure incurred "actual damages." Actual damages are those losses that were reasonably foreseeable, at the time the contract was made, as a probable result of a breach. A loss may be foreseeable as a probable result of a breach because it follows from the breach either:

(a) in the ordinary course of events, or

(b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

In calculating the Global Cure's actual damages, you should determine the sum of money that will put the Global Cure in as good a position as it would have been in if both Global Cure and Alfa Pharma had performed all of their promises under the contract.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**INSTRUCTION NO. 23**

**Consequential Damages: Claim One and Two**

Global Cure seeks an award of consequential damages in this case for the costs assessed to it by the Royal Hospital of Oman in the amount of $53,624 USD. Consequential damages resulting from the seller's breach include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. "Cover" is defined as good-faith and reasonable efforts by the buyer to procure substitute goods. Failure of the buyer to effect cover does not bar him or her from any other remedy.

## INSTRUCTION NO. 24

### Mitigation of Damages—Claims One and Two

As to Claims One and Two, Global Cure has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Defendants have the burden of proving by a preponderance of the evidence:

1.      that Global Cure failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

Alfa Pharma claims that the drugs it sold to Global Cure were "merchantable" and that Global Cure failed to mitigate its damages by trying to find another buyer of the drugs. It is Alfa Pharma's burden to prove that the drugs were "merchantable" by proving all four of the following requirements by a preponderance:

1. The drugs passed without objection in the trade under the contract description;

2. The drugs were fit for the ordinary purposes for which such goods are used;

3. The drugs were adequately contained, packaged, and labeled as the agreement required; and

4. The drugs conformed to the promises or affirmations of fact made on the container or label if any.

If you find that Alfa Pharma have proven by a preponderance of the evidence that Global Cure had reasonable courses of action open to it to reduce or eliminate its damages without incurring expenses that Alfa Pharma had not agreed to pay, but Global Cure failed to take these courses of action, then Global Cure has failed to mitigate damages.

To the extent that you find that Global Cure failed to mitigate its damages, you should reduce the amount of damages by the amount, if any, that Defendants have proved by a preponderance of the evidence would have been recovered by Global Cure to reduce its losses.

**INSTRUCTION NO. 25**

**Damages for Fraud**

It is the duty of the Court to instruct you as to the measure of damages. By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

If your verdict is for the Plaintiff, then you must determine the amount of money that will reasonably and fairly compensate the Plaintiff for such damages as you find were proximately caused by Defendants' fraud. The term "proximate cause" means a cause which in a direct sequence produces the injury complained of and without which such injury would not have happened.

If you find for the Plaintiff you should determine the Plaintiff's past economic damages proximately caused by Defendants' fraud, which are the amounts Plaintiff incurred in purchasing the drugs and the lost profits from the resale of the drugs.

The burden of proving damages rests upon the Plaintiff. It is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence.

Your award must be based upon evidence and not upon speculation, guess, or conjecture.

## INSTRUCTION NO. 26

### Duty to Deliberate

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.